AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Northern District of Oklahoma

FILED
MAR 2 4 2022
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. 22-mj-191-JFJ |
| | ) | |
| Ishmael Delgado | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __December 15, 2021__ in the county of __Tulsa__ in the Northern District of Oklahoma, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Drug Conspiracy |
| 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii) | Possession with Intent to Distribute 500 Grams or More of Methamphetamine |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

James A. Dawson, DEA TFO
*Printed name and title*

Sworn to before me by phone.

Date: 3-24-22

_____
*Judge's signature*

City and state: Tulsa, OK

United States Magistrate Judge Jodi F. Jayne
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN ARREST WARRANT IN THE NORTHERN DISTRICT OF OKLAHOMA

I, James A. Dawson, being first duly sworn, hereby depose and state as follows:

### Introduction

1. I am a police officer with the Tulsa Police Department (TPD) and have been so employed for over thirteen (13) years. I am presently assigned to the Drug Enforcement Administration (DEA) as a Task Force Officer (TFO). I have a Bachelor's Degree in Sociology with an emphasis in Criminology from the University of Oklahoma. I am an "investigative or law enforcement officer" of the United States within the meaning of Title 21, United States Code, Section 878(a).

2. I have a Bachelor's Degree in Sociology with an emphasis in Criminology from the University of Oklahoma. During my time as a Narcotics Detective with TPD Special Investigations Division (SID), and as a TFO with DEA, I have participated in wire and physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, debriefings of informants and reviews of taped conversations and drug records. Through my training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed and the methods of payment for such drugs. I have participated in numerous complex conspiracy cases prosecuted within the federal justice system. I have trained other narcotics detectives within SID and I have taught numerous classes throughout the

State of Oklahoma on overdose death murder investigations. I have completed formal training in narcotics investigations from the Tulsa Police Academy and the DEA, and have received informal training received from more experienced investigators.

3. I have participated in over 500 drug-related criminal investigations. I have authored both federal and state search warrants, participated in Title III investigations, purchased drugs and narcotics ("controlled dangerous substances") on numerous occasions in an undercover capacity. I have gained a considerable amount of knowledge about drug trafficking organizations and their members through my training and experience. I have interviewed hundreds of defendants involved in the use, manufacture, transportation, and illegal sale of controlled dangerous substances. During the course of these interviews, I have inquired and learned how individuals involved in drug distribution schemes and networks use and disperse the illegal proceeds generated from the illegal sale of controlled dangerous substances, including but not limited to chemicals commonly utilized in the illegal manufacture of methamphetamine. During the course of my training and interviews with various defendants, I have learned how individuals involved in drug distribution schemes maintain records and conspire to deceive law enforcement as well as rival distributors of controlled dangerous substances. I also know that drug traffickers and others involved in criminal activity often use coded language to communicate about

their illegal activities. Based on my training and experience, I know coded language is used by drug dealers to attempt to hide the true nature of the conversations.

4. The information contained in this Affidavit in support of an arrest warrant for **Ishmael Delgado, Jesus Ortiz,** and **Darnel Wright** based on law enforcement activities on December 15th, 2021. The facts in this affidavit come from my personal observations, my training and experience, and agents and other law enforcement officers. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 846 and 841(a)(1) and (b)(1)(A) – Conspiracy and Possession with Intent to Distribute 500 Grams or More of Methamphetamine – have been committed.

## Probable Cause

5. In September of 2021, I initiated an investigation into Jesus Ortiz, who had been identified as methamphetamine trafficker operating in Tulsa County and Wichita Kansas. On the morning of December 15th, I spoke with Special Agent (SA) Seibel with the DEA Office in Wichita, Kansas, who told me they were conducting surveillance on the residence of Jesus Ortiz. At approximately 8:30 am, I was advised that Jesus Ortiz was mobile in a maroon Dodge Charger bearing Kansas temporary tag 395-PSL. I was advised that Jesus Ortiz appeared to be following a black male who was driving a maroon Honda Accord bearing Kansas tag 606-

PDV. I was advised that the vehicles had stopped briefly at a tire shop in Wichita, Kansas, and had then appeared to conduct a "heat run" before heading Southbound towards Tulsa, Oklahoma, on Interstate 35. Based on my training and experience, a "heat run" is a pattern of driving that drug traffickers use to determine whether they are being followed or surveilled. I was advised that the vehicles had spaced out to several miles apart, but still appeared to be traveling together. Agents with the DEA Wichita Office stated that they would follow the vehicles to the Oklahoma/Kansas border where Agents with the DEA Tulsa Office could take over surveillance.

6. At approximately 9:20 am, TFO Laskey, TPD Investigator Oxford, and I observed the maroon Honda Accord crossing the Oklahoma state line. I began following this vehicle and maintained visual surveillance through the duration of the follow. A few minutes later, TFO Laskey and TPD Investigator Oxford observed the maroon Dodge Charger crossing the Oklahoma state line, and began following this vehicle, maintaining visual surveillance through the duration of the follow. At this time, Kansas DEA Agents ceased following these vehicles and returned to the Wichita area to surveil locations related to Jesus Ortiz.

7. At approximately 1100 hours, both vehicles crossed over the Keystone lake bridge on Hwy 412. A short time later, both vehicles were stopped for traffic violations: the maroon Honda Accord was stopped by Troopers Lockney and Griffey for an unsafe lane change/failure to signal a lane change in the area of 8100 West Hwy 412 Eastbound, and the maroon Dodge Charger was stopped by Troopers

4

Koch and Hyde for speeding and an unsafe lane change in the area of 17700 West Hwy 412 Eastbound in the Northern District of Oklahoma.

8. Following these stops, I was contacted by Trooper Lockney who stated that he had recovered approximately 3 kilos of suspected methamphetamine from the trunk of the maroon Honda Accord following a probable cause search of the vehicle. He stated that Darnel Wright had been identified as the driver. He stated that Darnel Wright wished to speak with investigators and brought him to my location nearby. The suspected methamphetamine was field-tested and confirmed to be methamphetamine.

9. I read Darnel Wright his Miranda rights from a pre-printed card and he stated that he understood his rights. He stated that he was not high or drunk. Post Miranda, he stated the following:

- Jesus Ortiz had loaned him money, and that he was driving loads of drugs for him to repay this debt. He stated that Ortiz was following him on this drive and was behind him somewhere.
- That the methamphetamine in the trunk had come from Jesus Ortiz earlier that morning. He stated that he had met Jesus Ortiz at his tire shop in Wichita Kansas, and that Jesus Ortiz had walked out of the shop with the box containing the methamphetamine, and put it in his (Wright's) trunk.
- That Jesus Ortiz was going to pay him $2000 for driving this load.

- That he had seen Jesus Ortiz with 12 kilos of methamphetamine at the tire shop approximately 3 weeks before.
- That he hadn't looked in the box that Jesus Ortiz put in his trunk, but that he knew he was delivering drugs for Jesus Ortiz.
- That he taken 3 trips to California with Jesus Ortiz in which he had driven loads of narcotics back to Kansas on behalf of Jesus Ortiz. He stated that he had driven the loads of drugs from California, and that Jesus Ortiz had followed him.

10. Following the interview with Darnel Wright, I spoke with Trooper Hyde who stated that he had recovered a quantity of marijuana from the maroon Dodge Charger following a probable cause search of the vehicle. He stated that Jesus Ortiz had been identified as the driver and sole occupant. He stated that Jesus Ortiz wished to speak with Investigators, and brought him to my location nearby.

11. I read Jesus Ortiz his Miranda rights from a pre-printed card and he stated that he understood his rights. He stated that he was not high or drunk. Upon learning what he was being charged with, he stated that he didn't have anything to say, because he was guilty of whatever he was guilty of, regardless of whether he talked or not. Upon conclusion of these interviews, both individuals were transported by OHP Troopers to the Tulsa County jail and booked with a DEA hold.

12. A short time later, I was contacted by Trooper Koch. Trooper Koch stated that once at booking, that Jesus Ortiz became adamant that he had changed his mind

and wanted to talk to me. At approximately 1400 hours, TFO Tim Wilson and I responded to the Tulsa County Jail and conducted an interview with Jesus Ortiz. During the interview, Jesus Ortiz stated the following:

- That the 6 pounds of methamphetamine in Wrights' trunk was being delivered to a heavy-set Hispanic male who he was supposed to meet at 21st and Garnett in Tulsa, Oklahoma. He stated that he (Ortiz) was going to sell the methamphetamine for $1200 per pound. He stated that he had previously sold this individual 2 pounds of methamphetamine at this same location.

- That earlier that morning, he and Wright had gone to the tire shop and picked up the methamphetamine. He stated that when he picked up the methamphetamine at the shop today, that it had been in a Modelo box next to a brown box. He stated that Wright had loaded the methamphetamine into the trunk. He stated that the tire shop is where he goes to pick up methamphetamine.

- That his supplier is in California and that he goes there to pick up bulk quantities of methamphetamine. He stated his supplier goes by "Akie" and that "Akie" lives in Los Angeles, California. He directed investigators to "Akie's" phone number, which was stored in his phone. I ran this phone number in a law enforcement database and found it to be associated with Ishmael Erick Delgado with a date of birth of December 7, 1993.

- That "Akie" had been present with him during the aforementioned delivery of 2 pounds of methamphetamine to the heavy-set Hispanic male in Tulsa, Oklahoma.
- That there should be drugs all over the place at the tire shop. He stated that "Akie" and another individual tell him to go to the tire shop whenever he needs to pick up drugs. When asked how much methamphetamine he had seen in the tire shop at one time, he made a gesture indicating a pile consistent in size with approximately 20 kilos of methamphetamine. He stated that the drugs in the tire shop belong to "Akie" and another individual.
- That he made 3 total trips to Los Angeles, and that he estimated he picked up 10 pounds each time, and that the drugs are fronted to him.
- That he goes and sell drugs anywhere Akie and the other individual tell him to go, including Kansas, Oklahoma, and Ohio.

13. A search warrant for Ortiz's tire shop was obtained by DEA agents and was executed later that same day. Approximately 4 kilograms of methamphetamine was located in the tire shop in Wichita, and approximately an ounce of methamphetamine and a quantity of US currency was located Ortiz's residence

14. Following the search, I spoke with SA Seibel. SA Seibel stated that they had made contact with a Hispanic male from Los Angeles named Ishmael Erick Delgado in Ortiz's apartment. SA Seibel stated that Delgado had stated that his phone number was 323-893-3224, the same number that Ortiz had provided for

8

"Akie", his Los Angeles methamphetamine supplier. Based on this, Agents suspected that Ishmael Erick Delgado was the true identity of "Akie." I provided Ortiz with a photo of Ishmael Delgado and he confirmed that the person in the photo was "Akie."

15. Based on my training and experience, I know that methamphetamine is commonly sold at the street level in one-gram quantities. Jesus Ortiz and Darnel Wright were found to be in possession of approximately 3 kilograms of methamphetamine, and approximately 4 kilograms of methamphetamine was located in the tire shop in Wichita, Kansas. This quantity of methamphetamine has a wholesale street value of approximately $35,000 and a retail street level value of more than $200,000, and as such, was likely possessed with intent to distribute.

16. Based on the foregoing, I believe there is probable cause that **Ishmael Delgado, Jesus Ortiz,** and **Darnel Wright** are in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A) – Conspiracy and Possession with Intent to Distribute 500 Grams or More of Methamphetamine and respectfully request that an arrest warrant be issued for **Ishmael Delgado, Jesus Ortiz,** and **Darnel Wright.**

Respectfully submitted,

_____
James A. Dawson, TFO
Drug Enforcement Administration

Sworn and subscribed to me via phone this 24th day of March, 2022.

_____
Jodi F. Jayne
United Sates Magistrate Judge