# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ISHMAEL ERICK DELGADO,<br><br>　　　　Defendant. | Case No. 22-cr-108-CVE-3 |

## OPINION AND ORDER

Before the Court is the Appeal of Bail Determination and Motion to Revoke Release Order ("Appeal") filed by the United States of America (the "Government"). Dkt. No. 5. Defendant Ishmael Erick Delgado ("Defendant") was originally ordered released on conditions by Magistrate Judge Rozella A. Oliver of the United States District Court for the Central District of California. *Id*. at 1-2; *see also* Dkt. No. 8 at 12-16. The Government filed the instant Appeal requesting this Court, which has original jurisdiction, to revoke Magistrate Judge Oliver's release order pursuant to 18 U.S.C. § 3145(a), and order Defendant detained pending trial. Dkt. No. 5 at 1, 5. Defendant filed his Response in opposition to the Government's Appeal on April 18, 2022. Dkt. No. 16. The Government's Appeal was heard before this Court on April 21, 2022. Dkt. No. 24.

## BACKGROUND

This matter was initiated on March 24, 2022 by complaint charging Defendant with Drug Conspiracy, in violation of 21 U.S.C. § 846, and Possession with Intent to Distribute 500 Grams or More of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vii) (the "Complaint"). Dkt. No. 1. The Complaint alleges that Defendant is a member of a drug trafficking operation which supplies "bulk quantities of methamphetamine" to be sold in "Kansas, Oklahoma, and Ohio." *Id*. at 7-8. According to the Complaint, Defendant's involvement in the drug

trafficking operation was revealed to investigators upon the interview of Defendant's alleged co-conspirator, Jesus Ortiz. *Id.* at 12. Ortiz told investigators that his supplier went by the name of "Akie," and provided agents with "Akie's" phone number. *Id.* Later, when agents performed a search of Ortiz's apartment in Kansas, they came into contact with Defendant who was present at Ortiz's apartment. Dkt. No. 1 at 14. Defendant had the same phone number as the phone number Ortiz provided for "Akie." *Id.* Ortiz was also shown a photo of Defendant who he confirmed was known to him as "Akie." *Id.*

A warrant for Defendant's arrest was issued on March 24, 2022. Dkt. No. 2. Defendant was arrested on March 28, 2022 in Los Angeles, California. Dkt. No. 15. That same day, the Government filed its Notice of Request for Detention and Defendant appeared before Magistrate Judge Oliver for a detention hearing. Dkt. No. 8 at 6-11. A Pretrial Services Report ("PSR") was provided to assist Magistrate Judge Oliver at the time of the hearing. Dkt. No. 5 at 6-10. The Report recommended that Defendant be released on $10,000 bond. *Id.* at 11.

During the detention hearing before Magistrate Judge Oliver, the Government proffered the sworn Complaint and both parties presented argument. Dkt. No. 23. After hearing argument, Magistrate Judge Oliver noted that, pursuant to the Complaint, the extent of Defendant's involvement in the drug conspiracy all hinged upon an alleged co-conspirator's word without any corroboration.[1] *Id.* For this reason, along with Defendant's ties to the Los Angeles community, Magistrate Judge Oliver ordered Defendant released on $10,000 bond, to be held for forty-eight (48) hours to allow the Government time to file an appeal of the release order. *Id.*; *see also* Dkt. No. 8 at 11. The Government filed its Appeal on March 30, 2022 and this Court entered an Order

---

[1] The Government responded, pointing out the phone number as corroborating evidence, but this was not addressed by the Magistrate Judge. Dkt. No. 15.

staying the Magistrate Judge's release order pending resolution of the Government's Appeal. Dkt. Nos. 5, 7. An Indictment was filed on April 18, 2021 charging Defendant with Drug Conspiracy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii). Dkt. No. 18.

On April 21, 2022, this Court held an evidentiary hearing on the Government's Appeal. Dkt. No. 24. The Government offered the testimony of James Dawson, United States Drug Enforcement Administration ("DEA") Task Force Officer, and asked the Court to take judicial notice of the PSR and Complaint. The Defendant offered no evidence or witnesses, other than a letter from Victor Moctezuma with 369 Security Inc. Dkt. No. 24-1. Both parties presented argument. The Court took the matter under advisement.

## STANDARD

Under 18 U.S.C. § 3145(a), "[i]f a person is ordered released by a magistrate judge . . . the attorney for the government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release[.]" 18 U.S.C. 3145(a). The Tenth Circuit requires this Court to conduct a *de novo* review of a magistrate judge's release order. *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003). "On *de novo* review of a magistrate judge's order, the district court is charged with making 'an independent determination of the proper pretrial detention or conditions for release.'" *United States v. Garcia*, 445 Fed. Appx. 105, 108 (10th Cir. 2011) (unpublished and quoting *Cisneros*, 328 F.3d at 616 n. 1).

Pursuant to 18 U.S.C. § 3142(f), the Court must consider whether there are conditions or a combination of conditions that will assure the appearance of Defendant and protect the safety of any other person or the community. The Court must consider the following factors when making this determination:

 (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

 (2) The weight of the evidence against the person;

 (3) The history and characteristic of the person, including –

  a. The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

  b. Whether, at the time of the current offense, or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal or completion of sentence for an offense under Federal, State, or local law; and

 (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). Further, the statute contains a rebuttable presumption that arises in a case, such as here, where "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act[.]" 18 U.S.C. § 3142(e)(3)(A). According to the Tenth Circuit,

> Once the presumption is invoked, the burden of production shifts to the defendant. However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government. The defendant's burden of production is not heavy, but some evidence must be produced. Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.

*United States v. Stricklin*, 932 F.2d 1353, 1354-55 (10th Cir. 1991). Therefore, while Defendant must produce some evidence as to flight risk and danger to the community, the Government always bears the burden of proof. *Id*.

4

**ANALYSIS**

The Indictment charges Defendant with drug conspiracy and possession with intent to distribute 500 grams or more of methamphetamine. Dkt. No. 18. A maximum term of imprisonment of ten (10) years or more is prescribed in the Controlled Substances Act for the drug conspiracy and possession charges. *See* 21 U.S.C. § 841(b)(1)(A) ("such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . ."). Based on its review of the record, including the Complaint [Dkt. No. 1], Indictment [Dkt. No. 18], briefs filed by the parties, and the evidence presented and argument heard at the April 21, 2022 evidentiary hearing, the Court finds that there is probable cause to believe that Defendant committed a drug offense with a maximum penalty of ten (10) years or more; thus, the rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of Defendant applies. 18 U.S.C. § 3142(e)(3)(A). Therefore, in accordance with 18 U.S.C. § 3142(g), the Court will analyze the factors set forth in the statute.

**I.      The nature and circumstances of the offense charged.**

As noted above, the Indictment [Dkt. No. 18] charges Defendant with drug conspiracy and possession with intent to distribute 500 grams or more of methamphetamine, which carries a maximum sentence of not less than ten (10) years and up to life. *See* 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii). Such an offense is of the kind contemplated in the § 3142 statutory presumption that no condition or combination of conditions could reasonably assure Defendant's appearance and safety to any other person and the community. 18 U.S.C. § 3142(e)(3)(A).

Therefore, the nature and circumstances of Defendant's charged drug offenses weigh in favor of detention.

## II.     The weight of the evidence.

Contrary to Magistrate Judge Oliver's findings at the time of the detention hearing, the weight of the evidence against Defendant is more than just his alleged co-conspirator's word. The Government's witness, DEA Task Force Officer James Dawson ("Dawson"), provided testimony substantially corroborating Defendant's involvement in the alleged drug conspiracy.

First, DEA agents were able to confirm that Defendant's phone number is identical to the number Ortiz provided for his supplier, "Akie." Subsequently, the DEA obtained phone records for both Defendant and Ortiz which showed that Defendant and Ortiz made around forty (40) phone calls to one another in the month leading up to Ortiz's arrest. Additionally, investigators found text messages between Defendant and Ortiz in which Defendant inquired whether Ortiz was able to "sell" a certain quantity, to which Ortiz replied that he had to sell the product for a lower price and indicated that he was having difficulty "moving product." Dawson testified that the phone calls and text messages between Defendant and Ortiz were consistent with drug trafficking and discussions regarding the sale and pricing of methamphetamine. Defendant offered no evidence to rebut the numerous telephone calls or the text messages between Defendant and Ortiz.

Additionally, during the DEA investigation, it was discovered that the drug trafficking organization at issue in this matter obtained its supply of methamphetamine from Mexico. Dawson testified that there were several wire transfers of money sent from Defendant's residence to various locations in Mexico between 2017 until Defendant's arrest. Dawson testified that while only one wire transfer was made in Defendant's name, anywhere from $20,000 to $30,000 had been sent to Mexico from Defendant's residence over the past couple of years, and anywhere from $60,000 up

to $100,000 had been sent to Mexico from Defendant's residence since 2017.  Of note, many of these wire transfers were in increments of just under $1,000.  Dawson testified that this is consistent drug trafficking because transfers of under $1,000 typically are not "flagged" and, therefore, often do not trigger an investigation.  Dawson also noted that these transfers continued even after Defendant's brother, who was also living at Defendant's residence, was arrested and convicted on drug conspiracy charges in Spring of 2021.  Defendant offered no evidence to suggest that there was any lawful purpose for these money transfers to Mexico.

Next, Dawson testified that on the day of Ortiz's arrest, DEA agents performed a search of Ortiz's apartment in Kansas and came in to contact with Defendant, who was present at Ortiz's apartment at the time of the search.[2]  Agents also recovered methamphetamine and around $8,000 in cash in Ortiz's apartment.  Defendant offered no evidence to suggest that he was present at Ortiz's apartment in Kansas on the day of Ortiz's arrest for any lawful purpose.

Dawson further testified that Ortiz's interview was inconsistent with someone simply providing information on another individual to try to minimize their own involvement in the crime. Dawson indicated that Ortiz made several self-incriminating statements and provided agents with information that they did not know prior to his arrest and that was later corroborated.  Dawson further noted that it is not unusual that Darnel Wright, another defendant charged in this matter, would have no knowledge of Defendant.  Dawson described Wright as a "drug mule" and

---

[2] The Court also notes that while Defendant argued that there was no evidence directly tying Defendant to the "tire shop" where Ortiz stated he got the methamphetamine, the "tire shop" was also located in Kansas where Defendant was on the day of Ortiz's arrest.

7

explained that drug trafficking organizations typically kept information separate from lower-level participants like Wright, who is generally considered a "fall man."

Additionally, Dawson stated that agents found several videos and photos on Ortiz's cell phone which depicted Defendant in the background. Ortiz also identified a photo of Defendant as "Akie." Finally, Ortiz confirmed that Defendant was with him for the sale of methamphetamine that occurred in Tulsa, Oklahoma in September 2021. Dawson stated that the DEA was staking out that sale and agents witnessed an unidentified male with Ortiz who matched Defendant's description. Defendant offered no evidence to rebut that he was the individual with Ortiz in Tulsa, Oklahoma at that time. Therefore, in consideration of the Complaint [Dkt. No. 1], the Indictment [Dkt. No. 18], and Dawson's testimony, the weight of the evidence weighs in favor of detention.

### III. The history and characteristics of the person.

According to Defendant's PSR and argument by defense counsel, Defendant was born in Los Angeles, California, where he has lived his entire life. Dkt. No. 5 at 7. Defendant resides in a home in Los Angeles with his parents, brother, girlfriend, and two (2) minor children. *Id*. Defendant also has two (2) sisters who live in Los Angeles and another brother who is incarcerated. *Id*. The PSR describes Defendant as a "lifetime resident" of Los Angeles, California, with family ties exclusively in that community. *Id*. at 7, 9. Defendant is a United States citizen and does not own a passport but does have some history of international travel to Mexico. Dkt. No. 5 at 7. Defendant reported that he was currently unemployed, but previously worked as a driver for Main Electric from January 2022 until March 2022 and as a driver for SCP Distributers from June 2018 until October 2021. *Id*. at 8. At the hearing, Defendant provided the Court with a letter from Victor Moctezuma with 369 Security Inc. which indicated that Defendant was/is an employee of

8

the company. Dkt. No. 24-1.[3] Defendant reported that he began using alcohol and marijuana at the age of fifteen (15) and began using cocaine at the age of twenty-one (21) and requested to receive substance abuse treatment. *Id*. The PSR indicates that Defendant has a criminal history which consists of juvenile offenses, including robbery and vandalism. Dkt. No. 5 at 8, 9.

The PSR and Defendant's representations at the hearing are contradicted by compelling evidence and testimony presented by the Government. While Defendant does appear to have significant family and community ties in Los Angeles, Defendant has not offered any explanation regarding his presence at Ortiz's apartment in Kansas at the time of Ortiz's arrest. Further, Defendant has not offered any evidence to rebut his alleged presence in Tulsa, Oklahoma in September 2021. Defendant also does not provide any evidence to support a lawful purpose for the money transfers to Mexico or the numerous phone calls to Ortiz in the month leading up to Ortiz's arrest. This unrebutted testimony and evidence create doubt as to whether Defendant will appear for trial and whether he poses a danger to the community.

**IV.     The nature and circumstances of the danger to any person or the community.**

"The concern about safety is to be given a broader construction than the mere danger of physical violence. Safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989). Specifically, "the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of any other person or the community." *Id*. As noted, Defendant allegedly was the supplier of a drug conspiracy involving distribution of methamphetamine. Dkt. Nos. 1, 18. Defense counsel did not produce any evidence, nor make any

---

[3] The Court notes that Defendant did not report 369 Security Inc. as an employer in his PSR. Dkt. No. 5 at 6-10.

meaningful argument, sufficient to overcome the danger to the community stemming from Defendant's charged drug trafficking offenses. The Court finds that this factor weighs in favor of detention. *See United States v. Vasquez*, No. 12-20066, 2012 WL 1970362, at *4 (D. Kan. June 1, 2012) (finding by clear and convincing evidence that defendant charged with being member of a large drug conspiracy was a danger to the community); *United States v. McCusker*, No. 12-20083, 2013 WL 308884, at *3 (same).

## CONCLUSION

Independent of the rebuttable presumption and taking into consideration the § 3142(g) factors alone, the Court concludes the Government has sustained its burden of proving by clear and convincing evidence that Defendant poses a danger to the community and that no condition or combination of conditions will ameliorate this danger. As outlined above, the nature and circumstances of the offense charged, the weight of the evidence against Defendant, the history and characteristics of Defendant, and the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release weigh in favor of detaining Defendant.

The Court also concludes the presumption was not rebutted by Defendant. Therefore, the scales tip further in the Government's favor when the presumption under 18 U.S.C. § 3142(e)(3) is considered.

The Government also sustained its burden to prove by a preponderance of the evidence that Defendant is a flight risk, and no condition or combination of conditions will alleviate Defendant's flight risk. While Defendant does appear to have significant ties to Los Angeles, Defendant has no ties to the Northern District of Oklahoma other than the alleged criminal conduct and interactions with his alleged co-conspirators. Therefore, following a *de novo* review of Magistrate Judge Oliver's release order, the Court finds that Defendant should be detained pending trial.

**IT IS THEREFORE ORDERED** that the Government's Appeal [Dkt. No. 5] is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Ishmael Delgado shall be detained pending trial. The Defendant is committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. The Defendant must be afforded a reasonable opportunity to consult privately with defense counsel. On order of the United States Court or on request of an attorney for the Government, the person in charge of the corrections facility must deliver Defendant to the United States Marshal for a court appearance.

DATED this 22nd day of April 2022.

JOHN F. HEIL, III
CHIEF UNITED STATES DISTRICT JUDGE